UNITED STATES v. The MAY. See Case No. 9,330.

## Case No. 15,753.

### UNITED STATES v. MAYER.

[Deady, 127.] 1

District Court, D. Oregon.  Nov. 10, 1865.

PERJURY—CONTRADICTORY AFFIDAVIT—INTERNAL REVENUE—STATEMENT OF INCOME—TESTIMONY—GOOD CHARACTER.

1. Upon an indictment for perjury, an affidavit of the defendant's directly contradicting the one upon which the perjury is assigned, is not sufficient evidence of the falsity of the latter.

2. Under the internal revenue act of June 30, 1864 (13 Stat. 239), a merchant, in making his statement of income, is entitled to deduct from his gross profits the bad debts made during the year to which the statement relates, or such as appear to be bad at the end of the year.

3. The falsity of the oath upon which perjury is assigned may be shown by the books and papers of the defendant, kept under his control and subject to his inspection.

4. Effect to be given to the testimony of hostile or friendly witnesses.

5. Evidence of good character, effect of, upon trial of a criminal charge.

This was an indictment [against Jacob Mayer] for perjury, alleged to have been committed by the defendant in swearing to his income return on May 9, 1865, for the year 1864. The defendant was a merchant engaged in the wholesale and retail staple and fancy dry-goods business in the city of Portland. In his return he stated the gross profits of his business at $8,800, and deductions on account of clerk hire, rent and losses at $6,752—leaving $2,048 of net income. The assessor for the district—Mr. Frazar—being dissatisfied with the return, caused an examination of defendant's books to be made, upon which he assessed his gross profits at $15,000 and deductions at $6,225—leaving $9,613 of net income. The assessor also assessed the defendant with the penalty authorized by the internal revenue act for making incorrect return. After the finding of the indictment—on July 26—the defendant made and verified an amended return, in which his gains and profits and deductions were stated in accordance with the result of the examination of his books as aforesaid, upon which the assessor remitted the penalty aforesaid. The far greater part of the deductions contained in the first return were claimed by the defendant to have been losses by bad debts made within the year. The principal question contested before the jury on the evidence, was as to the truth of the statement concerning the gross amount of the profits for the year. The evidence tended to show that the gross amount of sales was $82,000, and that the profits on sales over first cost, freight, and insurance, were from 15 to 20 per centum; and that on December 31, 1864, the defendant made up and entered in his books a list of what he then deemed bad debts, which amounted to no more than $1,200 to $1,500,

1 [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

some of which were afterwards collected. The indictment was found on July 7, 1865.

Joseph N. Dolph and Leopold Wolf, for plaintiff.

William Strong and W. W. Page, for defendant.

DEADY, District Judge (charging jury). Gentlemen of the jury, you have listened long and patiently to the allegations and evidence of the parties and the argument of counsel. It is now the duty of the court to instruct you in relation to the law of the case, and to give you such suggestions and directions concerning the evidence and the rules which should govern your deliberations and action as may appear proper and appropriate.

The indictment against the defendant is found under section 42 of the act of June 30, 1864 (13 Stat. 239), commonly called the internal revenue act, which provides as follows: "That if any person in any case, matter, hearing or other proceeding in which an oath or affirmation shall be required to be taken or administered under and by virtue of this act, shall, upon the taking of such oath or affirmation, knowingly and willfully swear or affirm falsely, every person so offending shall be deemed guilty of perjury, and shall, on conviction thereof, be subject to the like punishment and penalties now provided by the laws of the United States for the crime of perjury."

You will observe, gentlemen, that this section defines the crime to consist in "knowingly and willfully swearing falsely" as to any matter in which the oath is required by this act. This act does not prescribe the punishment, but provides that the punishment shall be in accordance with the law of the United States punishing perjury. The general act on this subject (4 Stat. 118), defines the crime to consist in "knowingly and willingly swearing falsely"—not differing materially from the definition given in section 42 of the internal revenue act—and prescribes the punishment to be by a fine not exceeding two thousand dollars and imprisonment at hard labor not exceeding five years.

Something has been said to you by counsel concerning the punishment prescribed by law for this crime, and how much or how little this circumstance should affect the deliberation or the decision of the jury. On that question I deem it proper to say something to you, and I will say it here. It is true, as has been stated by the counsel, that when you have passed upon the fact as to whether the defendant is guilty or not guilty, the punishment must be fixed by the court, and not by you. It is the duty of the jury to find the defendant guilty or not guilty, as they may determine from the facts shown by the evidence. The defendant may be punished under the statute according to the aggravation of the offence, by fine not exceeding two thousand dollars, or it may be one dollar, and by imprisonment in the penitentiary—for that

is what confinement at hard labor signifies—for a term not exceeding five years, or for one day. So far, gentlemen, as this punishment is concerned, it is not in itself to determine the result of your deliberations. You are not to find the defendant guilty because the law prescribes a light punishment for the offence, nor to acquit him because it imposes a heavy one. The jury are selected to try the guilt or innocence of the defendant, and not to prescribe the extent or manner of the punishment. The whole people of the United States, represented in congress, are the law-making power, and they determine by a rule uniform throughout the United States, what acts shall be declared criminal, and how and to what extent they shall be punished; so that it is not within the province of any particular jury to judge as to the punishment of a crime. The jury can only determine the guilt or innocence of the prisoner. Yet it is human nature, and it is reasonable that, in determining the question of a man's guilt or innocence, a jury should consider the result of their verdict, and that, in proportion to the severity of punishment, their deliberations should be marked with gravity and seriousness. A jury in determining a case where a man's life is at stake, would scan with more care the testimony of witnesses than in some ordinary case where only a few dollars are in controversy; but, nevertheless, you are not to violate your oaths by returning a verdict contrary to your honest convictions arising from the evidence because of the punishment prescribed by law.

While speaking of punishment, I may also say, that if you see proper you may recommend the criminal to the mercy of the court. I do not wish to mislead you in this. It would still rest with the court to examine into the merits of the case and determine the punishment within the limits fixed by the law, but in so doing the court would give respectful heed and consideration to your recommendation, and be governed by it so far as appeared proper and reasonable.

The defendant in this case is charged by the indictment of the grand jury of this district with the crime of perjury, alleged to have been committed on May 9, 1865, by willfully and knowingly swearing falsely to the statement of his gains and profits for the year 1864. To this charge the defendant pleads not guilty, and this plea of his, in law, controverts every material allegation of the indictment, and puts the proof of them upon the government.

The paper in proof which contains the statement sworn to on May 9, 1865, contains many matters not material to your inquiry in the determination of this case. The perjury, if any, was committed in swearing to the statement at the head of the paper, wherein the defendant says that the whole amount of his gains and profits for the year 1864 was only $8,800. Following this immediately is the statement of the expenses of the business

—proper deductions to be made from the gross gains or profits.

Your inquiry, then, as to whether the defendant has committed the crime of perjury as charged in the indictment, will be confined to the truth or falsity of this statement —that the gross gains and profits of the defendant for the year 1864, were only $8,800. The statement of the defendant's expenses in carrying on his business, as set forth in his first return, has not been controverted by any proof, if I recollect aright, except so far as the same is contradicted by the statement in the second return.

The claim of the prosecution, that you may find the defendant guilty on account of the contradictions in the two affidavits in this particular, is not sustained by the law applicable to the proof of perjury. The two affidavits standing alone, simply equalize each other—the proof afforded by them is in a state of equilibrium. Although you may have an opinion that the first is false and the second true, yet it would not be based upon such evidence as the law requires to produce and sustain a verdict of guilty upon an indictment for perjury. There must be some other proof, besides the admission in the second affidavit that the first is false in this particular. As I have said, then, the question for your determination is, whether the defendant committed perjury by willfully stating his gross gains and profits for the year 1864 to be only $8,800—knowing the same to be false.

To ascertain whether this statement is true or not, you must inquire what the gross gains or profits of the defendant really were. For this purpose you may take the proof of the gross amount of sales for the year, which appear to be within a fraction of $80,000. Take the proof as to what are the customary profits of such business during the year and find the reasonable average of them, and this you may assume to be the profits of the amount of sales. Deduct from this amount the expenses of the business as given in the statement of the defendant, except the items of insurance, freight and expressage, and you have the gains and profits except as I will further state to you. I except the items of insurance, freight and expressage, because all the witnesses in stating the usual rate of profits for that year, have taken such expenses into the account.

One other matter of deduction, and that is the insolvent debts or losses. As the court construes the internal revenue act, and it is the most favorable construction that could be made for the defendant, the defendant was authorized to deduct from his gross gains or profits, the amount of any debts which accrued and became insolvent in the year 1864. It is not sufficient that a debt became insolvent between the last day of the year and May 9. His affidavit, although made on May 9, 1865, is made not with reference to the state of things then existing, but as to what existed at the close of the year 1864. If you find from the testimony that any of these debts of which the witnesses have spoken, did become insolvent in the year 1864, or that the defendant as a reasonable man had good reason to think so, then you will deduct these from the gains or profits, thus ascertained. If by this process you find that the gains or profits of the defendant substantially agree with his statement of May 9, then the statement is not false, and your verdict must be not guilty. In determining what debts the defendant regarded as insolvent on December 31, 1864, if you find that the defendant at the time of closing his books at the end of the year, separated his solvent debts from his insolvent debts as a business transaction, this is the best evidence of what the defendant believed to be such debts. When a merchant at the end of the year, without reference to any pending controversy sits down in his counting-room, and deliberately determines that A & B are insolvent and C & D solvent, this is better evidence of what the defendant knew and thought about the condition of these debts at that date, than claims and opinions formed after a controversy has arisen about the matter.

If by this process, however, you find that the return made on May 9, was false, then you are to inquire whether the falsehood was knowingly and willfully stated by the defendant. This is a common sense question for you to determine from the evidence. If a person is honestly mistaken in his sworn statement, this is not perjury, or if he makes it honestly upon the advice of counsel after stating to him all the facts, where the question involves a question of law. But if a man rashly or fool-hardily swears to what he knows nothing about, or has no good reason to believe true, he cannot claim that this is a mistake, and the law declares it perjury. So if an oath is taken upon the advice of an attorney, it is not an excuse or justification, if the advice goes to the facts and not to some question of law. But in this case there is no evidence that the oath of May 9 was made under the advice of counsel or anybody else.

If you find that the oath was false, but taken not rashly or inconsiderately, and without knowledge of its falsehood, then your verdict should be not guilty. But if you find that the oath was false, and the defendant knew it, or took it rashly without knowing whether it was true or not, then you should find the defendant guilty.

One word as to the corrupt intent. The words of the statute defining the crime are knowingly and willfully—the word "corruptly" is not used. It may be a question whether the court should construe this statute, so as to require it to appear that the oath was taken knowingly and willfully with a corrupt intent, but the court will so construe it. A corrupt intent is a purpose to procure or make some unlawful advantage or gain to the affiant, or to injure another. This corrupt intent you may infer from all the circumstances

of the case. It is a mere matter of calculation to prove that the smaller the return, the less taxes the defendant would have to pay. If you find then that the oath was knowingly and willfully false, to a statement of his return which was less than the fact, it is a legitimate and reasonable inference, that the defendant took the oath for the purpose of unjustly and wrongfully securing to himself a portion of this tax, or what amounts to the same, defrauding the government out of it.

These are the general instructions which I deem it necessary to give you—to which I will add some remarks in relation to particular matters.

In regard to the second affidavit, let me remind you that the perjury charged against the defendant in the indictment, is not alleged to have been committed in swearing to it; and therefore, although such affidavit may be false—although the defendant did actually commit perjury in swearing to it, he cannot in this action be found guilty on that account. The question of guilt or innocence turns exclusively upon the fact as to whether the defendant committed the crime of perjury in taking the first affidavit. The defendant has been allowed to show to you the circumstances attending the taking of the second affidavit, so far as he desired to do so. What was said to him and what was said to others engaged in taking it, or who were merely lookers-on and taking no particular part in the matter—for the purpose of enabling you to judge more correctly as to whether this second statement was made by him because it was true, or whether he was induced to take it by the representations and inducements of others, although he knew it was false, thus showing you how much credit you are to give to it, in determining as between it and first affidavit, which is true. Counsel for the defendant in his argument to you last evening, read to you the report of the testimony given by Backenstos, a witness who appears to put everything in the most favorable light for the defendant, and I deem it proper to call your attention in this connection also to the statement of Thomas Frazar, the officer who had control over the proceeding—rather than Backenstos, who is a clerk in Mr. Frazar's office. If you will remember, Mr. Frazar testified that he told the defendant that he might sign the second affidavit or not, as he pleased; that it made no difference with him, whether it was signed or not, the taxes would be collected upon that assessment anyhow, but for the sake of having the papers in the office in regular form, he would prefer that they should be signed by the defendant. Now, Mr. Frazar was the person in authority. You are to consider also, what was said to the defendant at the time he signed the affidavit, by the witness Grooms, who appears to have been a deputy of Mr. Frazar, and who administered this oath and was exercising authority at the time. Grooms said to the defendant, as you will remember, that he had

better sign it; that he was instructed to say that if the defendant would sign it, he would thereby be relieved from the penalty imposed by the assessor, on account of the alleged misstatement in the false income return. Mr. Frazar was the officer in authority, and Mr. Grooms was exercising authority as his deputy. You are, therefore, to consider what was said by them. All these circumstances are to be considered by you in determining whether the second affidavit is true or not true, and how far it goes to show that the first one is false.

So far as the testimony relative to the penalty is concerned, it has been given to the jury to enable them to determine how far the defendant may have been induced to make the second affidavit, although he knew it to be false, for the purpose of being relieved from the payment of this additional sum.

As to what proof is necessary to constitute perjury, the old law was, that two witnesses were necessary to establish the falsity of the matter sworn to, but that rule has been greatly modified. First, it was modified by substituting for it, the rule that one witness and corroborating testimony or circumstances should be sufficient to prove the charge of falsity.

In the courts of the United States, books and documents alone have been held sufficient proof of the falsity of the oath. A celebrated case was quoted in your hearing last evening by counsel for the defendant where the falsity of the matter sworn to by the party as shown by the books, and papers kept by the defendant and under his control and inspection, was held sufficient proof of perjury, without a living witness. This was a case in which a party importing goods from Liverpool to the United States made oath to their value at the custom-house, which oath was shown to be false by the books and letters of the defendant. The ruling in this case was affirmed in the supreme court of the United States (U. S. v. Wood, 14 Pet. [39 U. S.] 430), and the law established that a party can be convicted of perjury without the evidence of any living witness as to the falsity of the oath. In this case, the second affidavit is a solemn admission under oath that the first affidavit is false. The testimony in regard to the sales of the defendant, as shown by his books and the testimony as to the profits upon such sales, is testimony as to the truth or falsity of the statement made in the first affidavit. If, then, you believe from the testimony given you, that this statement is false, and that it was made knowingly and willfully and with a corrupt intent, that will be sufficient evidence to justify you in finding a verdict of guilty.

A good deal has been said as to these books of the defendant. You are to presume, gentlemen, and act upon that presumption, that all the testimony which is pertinent to the issue in question and favorable to the defendant, has been submitted to you. Any pre-

tences to the contrary are mere buncomb, made by the counsel for the defendant for the purpose of influencing your minds otherwise than the testimony would warrant. I say such is the presumption. You are to decide this case as you have sworn to do, according to the evidence given you, and not according to what the counsel may tell you as to what might have been proved. So far as these books are concerned their contents have been shown to you only so far as to ascertain their truth and explain the statements made by the prosecution concerning them. This the defendant has been allowed to do—anything more would be irrelevant. For instance, the prosecution proves to you by testimony of the witnesses who have examined the books that the sales amount to so much, which requires no expert book-keeper, no great amount of mercantile erudition to ascertain, and if it did, the defendant might have had twenty book-keepers to examine them if he had desired it. The presumption is that this statement of the amount of sales is correct. The prosecution have also shown by Harry Nevison that between January 1, 1864, and January 15, 1865, at the time the defendant was posting his books and taking an account of business for 1864, an examination of the books was made, and that he selected such debts as he then considered bad and entered them on a page of the ledger for 1865. According to this selection the bad debts amounted to something between twelve and fifteen hundred dollars. As for the statement by counsel for defendant that the amount of the profits for the year 1864, should be shown by the books rather than the testimony of witnesses as to the average profits on such sales, you will remember, gentlemen, that the testimony of Backenstos was that he found no profit and loss accounts in the books, and there has been no testimony offered or given to contradict this statement, except that concerning the page of bad debts shown by the prosecution.

A good deal has been said to you about the veracity of the witness, Nevison. You are the exclusive judges of the credibility of the witness and you should not act rashly nor without judgment in exercising that decision. The witness, Nevison, has been assailed by the defendant as unworthy of belief. It is claimed that he harbors feelings of revenge or malice against the defendant, and that he has denied, or refused or failed to remember certain offensive remarks or threats which he made in relation to the defendant which other witnesses have testified to. You will take into consideration, in determining all these circumstances, the question whether a man may not hate another and yet tell the truth about him, whether he may not feel like seeing him punished and yet not necessarily play the part of a liar to injure him, particularly when under oath; but when you find a witness in a state of mind which evidences strong hatred toward the defendant you should be on your guard, for his passion may so sway his judgment or warp his memory as to cause him to misrepresent the facts. He may remember things and brood over them until he greatly enlarges them; but it does not follow, by any means, that because a man dislikes another, he will willfully swear a lie against him. On the other hand some of the witnesses are said to be old and warm friends or dependents of the defendant, and it may be well for you to consider whether love is not as strong a passion as hate. A devoted friend of the defendant is likely to swear falsely in his favor, as an enemy against him. You are to consider these things; I put you on your guard.

Again, a witness may through mistake swear falsely as to some particular, and yet testify truly as to others. Of this you may be satisfied from the innate probability of his statement or the corroboration or other admitted or established facts and circumstances before you. But if you are satisfied that a witness has intentionally sworn falsely in any material particular in his testimony, the remainder of his evidence should be received with distrust and not credited unless extremely probable in itself or corroborated. You are also the judges as to what the witness did say.

One thing more, as to character. Evidence has been introduced by the defendant to show that he has a good character for truth and veracity. Character is only important as evidence when a case is doubtful. No proof of good character against plain proof of guilt can be considered, because experience has shown that the best of men have fallen; but in cases of doubt, if it appears that a man has had a good character in the community in which he has lived, the fact should be taken into consideration by you as a circumstance against the probability of guilt. The law presumes a man innocent until he is proven to be guilty. To establish the fact that a man has, for years, borne a good character for truth and veracity in a community, it should be shown that he has lived in the gaze of the public, that he has been criticised, canvassed and tried and found worthy of confidence in this respect—but simply to show that nothing has been said about his character pro or con, is little more than the presumption which the law makes—that he is innocent.

In conclusion, gentlemen, allow me to say that you have an important duty to perform, both as regards the people of the United States and this defendant. As has been said of old, an oath is the end of controversy. Whenever it comes to pass that a man may swear falsely with impunity, all confidence between man and man will be at an end. Then there will be an end to the security upon which rests the fabric of civil society and government—the correct and impartial administration of justice.

The jury were unable to agree and were discharged without finding a verdict.